## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) BETTY MOSS, as the Personal Representative of the Estate of Ransom Andrew Moss, Deceased,<br><br>**Plaintiff,**<br><br>v.<br><br>(1) CREEK COUNTY PUBLIC FACILITIES AUTHORITY;<br>(2) ADVANCED CORRECTIONAL HEALTHCARE, INC.;<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)  Case No. 16-CV-00517-GKF-FHM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### FIRST AMENDED COMPLAINT

**COMES NOW** Plaintiff, Betty Moss ("Plaintiff"), as Personal Representative of the Estate of, Ransom Andrew Moss, deceased, and for her causes of action against the Defendants, alleges and states as follows:

1. Creek County Public Facilities Authority is a public subdivision of the State of Oklahoma (hereinafter "County").

2. Advanced Correctional Healthcare, Inc. (hereinafter "ACH") is a foreign corporation incorporated in the State of Illinois doing business within the Northern District of Oklahoma.

3. Except as otherwise indicated, all acts and omissions referred to herein occurred within the two years prior to filing this complaint.

4. This complaint arises under the civil rights statutes of the United States and under diversity. Specifically, 42 U.S.C. § 1983 and 28 U.S.C. § 1332 are applicable.

5. Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1332 this Court has jurisdiction.

6. All material allegations herein occurred within the Northern District of Oklahoma. Thereby, making venue proper in this Court.

7. The Creek County Public Facilities Authority d/b/a the Creek County Detention Center a/k/a Creek County Jail is, and was during the time period at issue, the final policy maker for all material conduct of the Creek County Detention Center and its employees. All acts, customs, policies, practices, failure to train and failure to supervise its employees alleged herein are attributed to the Creek County Public Facilities Authority.

8. Both within the applicable statute of limitations, and presumptively for many years prior thereto, the County has been in charge of the Detention Center where its unconstitutional policies and procedures or failure to enact or enforce constitutional policies and procedures have allowed inmates to be withheld treatment and/or medication that is necessary for their physical and mental health and wellbeing.

9. All the Conduct alleged herein by the Creek County Public Facilities Authority and its employees was performed while acting under the color of law and within the meaning of 42 U.S.C. § 1983.

10. Plaintiff further alleges that Advanced Correctional Healthcare, Inc. (hereinafter "ACH") was contracted to provide some, or all, of the medical and mental health needs to the Creek County Public Facilities Authority during the applicable time periods. ACH was at all time relevant hereto responsible, in part or in whole, for providing medical and mental health services, and medication, to Mr. Moss while he was in custody

of the Creek County Detention Center. ACH was additionally responsible, in part or in whole, for implementing Creek County Jail policies and procedures regarding medical and mental health treatment, and in assisting in developing those policies and procedures regarding medical and mental health treatment, and in assisting in developing those policies and training and supervision of its employees and/or agents.

11. Recognizing the extraordinary vulnerability of persons who are inmates of a county jail for any reason, and the county's responsibility to provide care for any serious medical or mental health need and/or protection from self-harm, the Oklahoma and United States Constitutions, and Oklahoma common law, require that proper medical and mental health care and/or medications be provided to prisoners and detainees.

12. It is further alleged the County has failed to enact a policy and/or procedure to evaluate, treat and/or protect inmates from suicidal acts.

13. It is further alleged that the County had a policy, custom, or practice of allowing an environment for its employees to refuse to provide treatment and/or protections from those exhibiting suicidal thoughts or symptoms.

14. It is further alleged that the County, or its administration, was deliberately indifferent to the Constitutional rights of the decedent set forth herein, and/or the direct and proximate cause of the damages sought by the plaintiff.

15. It is further alleged that the County, or its administration, contracted and advised ACH to provide medical and mental health care, and medications, to its inmates and detainees. The County, in doing so, allowed ACH to become a policy maker regarding medical and mental health services and/or distributing medications. Additionally,

budgetary restrictions and/or selecting an unqualified medical administrator constitutes deliberate indifference to the constitutional rights of the decedent and/or is the direct and proximate cause of the damages sought by the Plaintiff.

16.     The ineffective or inappropriate actions of ACH, which include improper policies and procedures, and/or failing to provide prompt and adequate medical and psychiatric treatment and supervision, arises to deliberate indifference and/or negligence.

17.     Plaintiff further alleges that on or about August 17, 2014 the decedent, Ransom Andrew Moss, was in the custody of the Creek County Detention Center where he took his life.

18.     Prior to being placed into custody at the Creek County Detention Center, Ransom Moss was being treated by primary care physician, Dr. Schafer of Bristow, OK for chronic pain. Part of that treatment required Mr. Moss taking tramadol and other medications on a daily basis for an extended period of time. Failure to provide Mr. Moss with his needed medication caused severe opiate-like withdrawal symptoms, including atypical symptoms such as depression, anguish, and suicidal thoughts. Upon information and belief, both defendants knew Mr. Moss was taking these medications and that discontinuation of those medicines created a larger risk of depression and suicide. Despite this knowledge, both defendants failed to provide Mr. Moss his necessary medication.

19.     On or about June 15, 2014, another inmate, David Allen Ernst, committed suicide at the very same facility wherein all defendants shared responsibility for treatment and supervision of decedent Moss. Upon information and belief, decedent Moss became heavily affected by the death of Ernst due in part to Moss having helped cut Ernst down after Ernst had hung himself.

20. Additionally, and even prior to the death of Ernst, Mr. Moss was mentally challenged, severely depressed, and under medical care for pain and depression. All defendants were notified and aware of decedent Moss's condition. In complete callous behavior, one LPN Nurse described Moss as a "certified nut."

21. On or about August 17, 2014, Ransom Andrew Moss died after hanging himself. Plaintiff further alleges that the decedent on multiple occasions made the Defendants aware of his need for treatment, evaluations and/or medications to be prescribed. This failure to monitor, treat, and/or supply or permit the decedent his medications was the direct and proximate cause of the decedent's death.

22. Upon information and belief, multiple witnesses noticed decedent's behavior and heard him exhibit suicidal ideations. These witnesses identified that Moss was distraught regarding his situation at the jail, his court case, and the death of Ernst. Upon information and belief, at least one witness

-= reported that information to County officials. Despite having knowledge that decedent was at risk for committing suicide, the County was deliberately indifferent to decedent's rights, safety, and medical care.

23. Upon information and belief, the County took no action to prevent or contain the risk of decedent's suicide. At least one county official deliberately gave false information regarding their supervision of decedent in order to avoid discipline and/or liability.

24. Upon information and belief, both Defendants knew that decedent not having access to his medications could result in depression and suicide. Despite this, both

defendants denied decedent access to that medication and/or counselling and were deliberately indifferent to the known risk of suicide it would create in decedent.

25. Based on the foregoing allegations, Creek County Public Facilities Authority and/or ACH was deliberately indifferent and/or negligent to the Constitutional rights of the damages sought by the Plaintiff set forth herein, by and through their identified acts and/or negligent to the Constitutional rights of the damages sought by the Plaintiff set forth herein, by and through their identified acts and/or failures to act. Additionally, under the Oklahoma Constitutional law, the Creek County Public Facilities Authority is liable for any negligent acts in violation of the Oklahoma Constitutional rights afforded to the decedent as allowable by law.

## CLAIMS FOR RELIEF

**Cruel and Unusual Punishment in Violation of the Eighth
and/or Fourteenth Amendments to the Constitution of the United States
(42 U.S.C. § 1983) Defendants Creek County Public Facilities Authority
and Advanced Correctional Healthcare, Inc.**

26. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 25, as though fully set forth herein.

27. All Defendants knew there was a strong likelihood that Mr. Moss's condition would cause his death or permanent injury. Mr. Moss had obvious, serious and emergent medical issues and needs, including depression, mental illness, suicidal ideations, and other conditions unknown to Plaintiffs but made known to these Defendants at the time of his arrest, when he was taken to the Jail, during his stay at the Jail, and numerous other times prior to his death.

28. Nonetheless, all Defendants disregarded the known and obvious risks to Mr. Moss's health and safety.

29. All Defendants failed to provide, *inter alia*: an adequate or timely medical evaluation and mental health evaluation, any assessment, to properly follow care instructions upon discharge from the hospital, or adequate medical monitoring and supervision or to otherwise care for Mr. Moss while he was placed under their care, in deliberate indifference to Mr. Moss's serious medical and mental health needs, health and safety.

30. As a direct and proximate result of Defendants' conduct, Mr. Moss experienced severe physical pain, severe emotional distress, severe mental anguish, loss of his life, and all other compensatory damages alleged herein or otherwise recoverable by his estate.

31. There is an affirmative link between the aforementioned acts and/or omissions of these Defendants in being deliberately indifferent to Mr. Moss's serious medical and mental health needs, health and safety and policies, practices and/or customs which both defendants respectively promulgated, created, implemented and/or were responsible for maintaining.

32. Such policies, practices and/or customs include, but are not limited to:

a. The failure of each entity or individual to promulgate, implement or enforce, adequate medical and mental health treatment or supervision policies responsive to the serious medical and mental health needs of inmates like Mr. Moss;

b. Inadequate medical and mental health triage screening by law enforcement officers or at the Jail that fails to identity inmates with serious medical and mental health needs;

    c.    Severe limitation of the use of off-site medical service providers, even in emergent situations, at the Jail;

    d.    Untimely medical and mental health examinations and treatment at the Jail;

    e.    Understaffing medical personnel at their Jail or under-training employees and/or officers on how to identify, assess or react to emergent medical situations;

    f.    Jail's failure to adequately train Jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical and mental health needs;

    g.    Jail's failure to supervise, oversee or otherwise to require the physician "Medical Director" to actually discharge his contractual duties in protection of inmate health and safety; and

    h.    Defendant ACH's complete failure to perform its contractual duties as medical provider to the jail.

33.    All Defendants knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Mr. Moss especially in light of the very recent death of David Ernst.

34.    All Defendants disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Moss.

35.    All Defendants through continued encouragement, ratification, and approval of the aforementioned policies, practices, and/or customs, in spite of their known

and/or obvious inadequacies and dangers, have been deliberately indifferent to inmates', including Mr. Moss's, serious medical needs.

36. There is an affirmative link between the unconstitutional acts of Jail subordinates and the County's adoption and/or maintenance of the aforementioned policies, practices and/or customs.

37. As a direct and proximate result of the aforementioned policies, practices and/or customs, Mr. Moss experienced severe physical pain, severe emotional distress, severe mental anguish, loss of his life, and all other compensatory damages alleged herein or otherwise recoverable by his estate or its beneficiaries.

38. At all times pertinent hereto, all Defendants were acting under color of state law.

39. All defendants were charged with implementing and assisting in developing the policies of the Creek County Jail with respect to the medical and mental health care of inmates at the Creek County Jail and have the responsibility to adequately train and supervise said employees.

40. All defendants are involved in, and exert control over, the Jail's medical program.

41. All defendants control the policies and practices of the Detention Center, particularly with respect to medical and mental health care provided at the Creek County Jail.

42. There is an affirmative link between the deprivation of Mr. Moss's right to be free of cruel and unusual punishment, and substantive due process, and the policies,

practices and/or customs all defendants promulgated, created, implemented and/or were responsible for maintaining.

  43. Such policies, practices and/or customs include, but are not limited to:

  a. The failure to promulgate, implement or enforce adequate medical and mental health treatment policies responsive to the serious medical and mental health needs of inmates like Mr. Moss;

  b. Inadequate medical and mental health triage screening that fails to identify inmates with serious medical needs;

  c. Severe limitation of the use of off-site medical and diagnostic service providers, even in emergent situations;

  d. Untimely medical and mental health examinations and treatment;

  e. Understaffing of medical personnel;

  f. The failure to adequately train employees with respect to the proper assessment, classification and treatment of inmates with serious medical conditions;

  g. The failure to allow for transport to off-site providers when necessary or prudent; and

  h. County's ratification of ACH's complete and total deliberate indifference to Creek County Jail inmates and its contractual duties for their health care.

  44. All defendants knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Mr. Moss.

45. All defendants disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Moss.

46. All defendants tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew (and/or it was obvious) that such conduct was unjustified and would result in violations of constitutional rights, and were deliberately indifferent to the serious medical needs of inmates like Mr. Moss.

47. As a direct and proximate result of the aforementioned policies, practices and/or customs, Mr. Moss experienced severe physical pain, severe emotional distress, severe mental anguish, loss of his life, and all other compensatory damages alleged herein or otherwise recoverable by his estate.

48. Additionally, Plaintiff is entitled to entitled to attorney's fees, costs of this action, interest as provided by law, and such other relief as is just and proper.

### Medical Negligence – Advanced Correctional Healthcare, Inc.

49. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 48, as though fully set forth herein.

50. Mr. Moss had a lengthy medical history of depression, anxiety, and mental illness. When Jail employees brought Mr. Moss to the jail, he was under the care and treatment of the jail as well as ACH. ACH was assigned as responsible for Mr. Moss's care.

51. ACH failed to provide necessary medical evaluation, diagnosis or treatment. ACH failed, among other things, to follow the applicable standard for medical care by:

    a.    Failing to further evaluate Decedent and treatment for possible depression and mental illness;

    b.    Failing to properly address the foreseeable implications of decedent being deprived necessary medication while at the Jail;

    c.    Failing to provide supervision and treatment after being notified that decedent was at high risk for suicide; and,

    d.    Failing to provide psychological treatment, evaluation, and/or care in a timely manner.

52.    Due to the negligent and/or reckless failures experienced by Mr. Moss while at the jail and under the care of ACH, Mr. Moss was put back in the jail environment with no medication or other treatment. As his condition worsened and the Jail and ACH sought no additional outside medical care, Mr. Moss suffered greatly and ultimately died.

53.    It is a direct and proximate result of the actions of ACH together with the Jail's failures, that Mr. Moss suffered and died. As a result of ACH and/or its employees, servants, agents or contractors negligent, reckless or intentional acts, Plaintiff has been substantially damaged in sums in excess of Seventy-Five Thousand Dollars ($75,000.00) for which Plaintiff should recover judgment.

### Wrongful Death 12 O.S. § 1053 – Advanced Correctional Healthcare, Inc.

54.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53, as though fully set forth herein.

55.    Decedent Moss died at the jail facility while under the care of ACH.

56.    Decedent Moss's death was entirely preventable but for the negligent and/or reckless failures experienced by Mr. Moss while at the jail and under the care of ACH.

57. Mr. Moss suffered immensely due to the conduct of ACH including mental anguish and loss of life while at the Jail. Mr. Moss also lost any possible future wages and benefits he may have accumulated later in life.

58. The heirs and next of kin of Ransom Andrew Moss suffered as a result of the Moss's death including: the loss of financial support of contributions of money to his child and immediate family; the grief of his child; the loss of companionship and parental care, training, guidance, or education that would have been forthcoming from Decedent Moss to his child, and the loss of companionship of Decedent Moss by his child; the loss of the companionship of his family The pain and suffering of Decedent Moss; and the medical and burial expenses.

59. It is a direct and proximate result of the actions of ACH that Mr. Moss suffered and wrongfully died. As a result of ACH and/or its employees, servants, agents or contractors negligent, reckless or intentional acts, Plaintiff has been substantially damaged in sums in excess of Seventy-Five Thousand Dollars ($75,000.00) for which Plaintiff should recover judgment.

**Violations of Oklahoma Constitution Article 2, §§ 7 & 9 – Defendants Creek County Public Facilities Authority and Advanced Correctional Healthcare, Inc.**

60. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 60, as though fully set forth herein.

61. The Oklahoma Constitution prohibits the infliction of cruel and unusual punishment as well as the deprivation of life, liberty, or property without due process of law.

62. All Defendants knew there was a strong likelihood that Mr. Moss's condition would cause his death or permanent injury. Mr. Moss had obvious, serious and

13

emergent medical issues and needs, including depression, mental illness, suicidal ideations, and other conditions unknown to Plaintiffs but made known to these Defendants at the time of his arrest, when he was taken to the Jail, during his stay at the Jail, and numerous other times prior to his death.

63. Nonetheless, all Defendants disregarded the known and obvious risks to Mr. Moss's health and safety.

64. All Defendants failed to provide, *inter alia*: an adequate or timely medical, or mental health, evaluation, any assessment, to properly follow care instructions, or adequate medical monitoring and supervision or to otherwise care for Mr. Moss while he was placed under their care, in deliberate indifference to Mr. Moss's serious medical and mental needs, health and safety.

65. As a direct and proximate result of Defendants' conduct, Mr. Moss experienced severe physical pain, severe emotional distress, severe mental anguish, loss of his life, and all other compensatory damages alleged herein or otherwise recoverable by his estate.

66. There is an affirmative link between the aforementioned acts and/or omissions of these Defendants in being deliberately indifferent to Mr. Moss's serious medical needs, health and safety and policies, practices and/or customs which both defendants respectively promulgated, created, implemented and/or were responsible for maintaining.

67. Such policies, practices and/or customs include, but are not limited to:

a. The failure of each entity or individual to promulgate, implement or enforce, adequate medical and mental health treatment or supervision policies responsive to the serious medical needs of inmates like Mr. Moss;

b. Inadequate medical triage screening by law enforcement officers or at the Jail that fails to identity inmates with serious medical and mental health needs;

c. Severe limitation of the use of off-site medical service providers, even in emergent situations, at the Jail;

d. Untimely medical and mental health examinations and treatment at the Jail;

e. Understaffing medical personnel at their Jail or under-training employees and/or officers on how to identify, assess or react to emergent medical situations;

f. Jail's failure to adequately train Jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical and mental health needs;

g. Jail's failure to supervise, oversee or otherwise to require the physician "Medical Director" to actually discharge his contractual duties in protection of inmate health and safety; and

h. Defendant ACH's complete failure to perform its contractual duties as medical provider to the jail.

68. All Defendants knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health

and safety of inmates like Mr. Moss especially in light of the very recent death of David Ernst.

69. All Defendants disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Moss.

70. All Defendants through continued encouragement, ratification, and approval of the aforementioned policies, practices, and/or customs, in spite of their known and/or obvious inadequacies and dangers, have been deliberately indifferent to inmates', including Mr. Moss's, serious medical and mental health needs.

71. There is an affirmative link between the unconstitutional acts of Jail subordinates and the County's adoption and/or maintenance of the aforementioned policies, practices and/or customs.

72. As a direct and proximate result of the aforementioned policies, practices and/or customs, Mr. Moss experienced severe physical pain, severe emotional distress, severe mental anguish, loss of his life, and all other compensatory damages alleged herein or otherwise recoverable by his estate or its beneficiaries.

73. At all times pertinent hereto, all Defendants were acting under color of state law.

74. All defendants were charged with implementing and assisting in developing the policies of the Creek County Jail with respect to the medical and mental health care of inmates at the Creek County Jail and have the responsibility to adequately train and supervise said employees.

75. All defendants are involved in, and exert control over, the Jail's medical program.

76. All defendants control the policies and practices of the Detention Center, particularly with respect to medical and mental health care provided at the Creek County Jail.

77. There is an affirmative link between the deprivation of Mr. Moss's Oklahoma constitutional right to be free of cruel and unusual punishment and policies, practices and/or customs all defendants promulgated, created, implemented and/or were responsible for maintaining.

78. Such policies, practices and/or customs include, but are not limited to:

a. The failure to promulgate, implement or enforce adequate medical and mental health treatment policies responsive to the serious medical needs of inmates like Mr. Moss;

b. Inadequate medical and mental health triage screening that fails to identify inmates with serious medical and mental health needs;

c. Severe limitation of the use of off-site medical and diagnostic service providers, even in emergent situations;

d. Untimely medical and mental health examinations and treatment;

e. Understaffing of medical personnel;

f. The failure to adequately train employees with respect to the proper assessment, classification and treatment of inmates with serious medical and mental health conditions;

g. The failure to allow for transport to off-site providers when necessary or prudent; and

      h.      County's ratification of ACH's complete and total deliberate indifference to Creek County Jail inmates and its contractual duties for their health care.

79. All defendants knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Mr. Moss.

80. All defendants disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Moss.

81. All defendants tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew (and/or it was obvious) that such conduct was unjustified and would result in violations of Moss's Oklahoma constitutional rights, and were deliberately indifferent to the serious medical needs of inmates like Mr. Moss.

82. As a direct and proximate result of the aforementioned policies, practices and/or customs, Mr. Moss experienced severe physical pain, severe emotional distress, severe mental anguish, loss of his life, and all other compensatory damages alleged herein or otherwise recoverable by his estate.

83. Additionally, Plaintiff is entitled to entitled to attorney's fees, costs of this action, interest as provided by law, and such other relief as is just and proper.

**WHEREFORE**, based on the foregoing, Plaintiff prays that this Court grant her a judgment against these Defendants as follows: a) for an award of compensatory damages in an amount to be determined by a jury, b) reasonable attorney's fees, c) the costs of this action, d) interest as provided by law and for all other relief this Court deems just and proper.

Respectfully Submitted:


__/s/ G. Gene Thompson_____
Carla R. Stinnett, OBA No. 19532
G. Gene Thompson, OBA No. 31243
John S. Nobles, OBA No. 31173
Andrew M. Casey, OBA No. 32371
Maxey P. Reilly, OBA No. 20315
STINNETT LAW
404 East Dewey Avenue, Suite No. 202
Sapulpa, OK 74066
Telephone: (918) 227-1177
Facsimile:  (918) 227-1197
Email:  carla@stinnettlaw.com
           gene@stinnettlaw.com
           andrew@stinnettlaw.com
           **ATTORNEYS FOR PLAINTIFF**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

**CERTIFICATE OF SERVICE FORM FOR ELECTRONIC FILINGS**

I hereby certify that on the 18th day of November 2016, I electronically filed the foregoing document with the United States District Court for the Northern District of Oklahoma by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Michael S. McMillin, via electronic mail at msmcmillin@fentonlaw.com
*Attorney for Defendant Advanced Correctional Healthcare*
Ambre Gooch, via electronic mail at gooch@czwglaw.com
Christopher Collins, via electronic mail at cjc@czwglaw.com
*Attorneys for Defendant Creek County Public Facilities Authority*

Carla R. Stinnett, via electronic mail to: carla@stinnettlaw.com
G. Gene Thompson, via electronic mail to: gene@stinnettlaw.com
Andrew M. Casey, via electronic mail to: andrew@stinnettlaw.com
*Attorneys for Plaintiff*

                                                  __/s/ G. Gene Thompson